UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| HAMILTON COUNTY EMERGENCY COMMUNICATIONS DISTRICT, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | CASE NO. 1:14-cv-376-CLC-SKL |
| LEVEL 3 COMMUNICATIONS, LLC, | ) ) ) | |
| Defendant. | ) ) | |

**ORDER**

Before the Court is a motion to strike the allegedly late-filed report of one of the Plaintiffs'

experts filed by Defendant Level 3 Communications LLC ("Level 3") [Doc. 97]. Plaintiffs,

fifteen different Tennessee emergency communications districts (the "Districts"), filed a response

in opposition [Doc. 101], and Level 3 filed a reply [Doc. 102]. The motion is now ripe, and the

Court finds a hearing is not necessary. The motion will be denied.[1]

**I.    BACKGROUND**

The overall dispute in this case and related cases concerns funding for 911 emergency call

---

[1] Level 3 also filed a motion [Doc. 98] to add a "missing" exhibit to the motion to strike. The exhibit Level 3 seeks to add, however, is already attached to the motion to strike (although it is mislabeled) [Doc. 97-6]. The exhibit Level 3 appears to have inadvertently left out is attached to its reply [Doc. 102-3]. Accordingly, the Court will deny the motion [Doc. 98] to add the exhibit as moot.

centers, which is accomplished through a "charge" levied on phone users.[2] Telecom companies that supply phone lines and service, like Level 3, are (or at all times relevant, were) required by law to collect the charge from their customers, and remit the payment to the Districts that operate the 911 call centers. The Districts allege Level 3 wrongfully failed to bill or underbilled their customers, which resulted in losses to the Districts' funding.

The instant motion concerns the expert report of Randall Hebert, the Districts' damages expert ("Herbert"). As Hebert put it, he was retained to "develop an independent opinion relative to statistical estimation of missing data and the calculation of damages relative to the [Districts] and remittance of fees collected on lines supplied by the Defendant." [Doc. 97-1 at Page ID # 2416]. Simply stated, the reports include calculations of damages based on the number of phone lines multiplied by the applicable rate as compared to the amount remitted, calculated on a month-by-month basis from June 2004 through December 2014. Hebert determined the number of phone lines by reference to documents known as Wireline Activity Reports ("WARs"). These are reports Level 3 produced monthly, on a contemporaneous basis, during the relevant time period for the Tennessee Regulatory Agency.

Hebert's initial report was served on July 31, 2019 ("July Report"), followed by an amended report on September 13, 2019 ("September Report"). When Hebert initially prepared these reports, he apparently did not have WARs for the months of January 2012 through December 2014. For those months, Hebert used statistical estimation methods to determine the number of phone lines.

Hebert was deposed on September 23, 2019. During his deposition, Level 3 questioned

---

[2] The Court's Memorandum at Docket no. 79 describes this case's background in more detail.

Hebert about why he did not use the phone line count numbers from the 2012-2014 WARs. Hebert agreed that using the WAR line counts would be preferable and more accurate. The Districts contend that "immediately following the deposition," they determined Level 3 had indeed provided the Districts with the 2012-2014 WARs, but due to technological problems on the Districts' side, these two years' worth of WARs were never provided to Hebert [Doc. 101 at Page ID # 2617].

On September 30, 2019, Level 3 served its rebuttal expert report, from Brian Pitkin. Pitkin identified several issues with Hebert's September Report, including some "data and formula entry errors." [Doc. 97-2 at Page ID # 2467]. Then, on October 10, 2019, the Districts served Hebert's second amended expert report ("October Report"), in which Hebert corrected the data and formula entry errors identified by Pitkin, and, importantly for current purposes, incorporated the data from the 2012-2014 WARs that had been previously overlooked by the Districts.

In the instant motion, Level 3 argues the October Report is untimely and improper. Level 3 asks the Court to strike the October Report from these proceedings pursuant to Federal Rule of Civil Procedure 37. In the alternative, if the October Report is allowed, Level 3 asks the Court to order the Districts to "reimburse Level 3 for the additional costs [it] will incur as a result of the late-filed report," including the costs of filing the motion, as well as for further deposition of Hebert and to pay Pitkin to review Hebert's latest work [Doc. 97 at Page ID # 2412-13].

## II. STANDARDS

Federal Rule of Civil Procedure 26(a)(2)(B) requires a party to make certain expert disclosures and reports. The rule provides that, unless a stipulation or court order says otherwise, the expert's disclosure "must be accompanied by a written report—prepared and signed by the

witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." The rule requires the report to contain: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them[.]" Fed. R. Civ. P. 26(a)(2)(B)(i)-(iii).

Rule 26(e) describes a party's duty "to 'supplement or correct' its initial disclosure." *Bentley v. Highlands Hosp. Corp.*, No. CV 15-97-ART-EBA, 2016 WL 5867496, at *3 (E.D. Ky. Oct. 6, 2016) (quoting Fed. R. Civ. P. 26(e)(1)). Specifically, Rule 26(e) provides:

> (1) *In General.* A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response:
>
>> (A) *in a timely manner* if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>>
>> (B) as ordered by the court.
>
> (2) *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Notably, this rule limits the time allowed to supplement or correct a disclosure or response. *Bentley,* 2016 WL 5867496, at *4. "And it is not hard to see why—otherwise there would be no finality to expert reports, as each side, in order to buttress its case would go on ad infinitum supplement[ing] existing reports and modify[ing] opinions previously given." *Id.* (internal

quotation marks omitted) (quoting *Beller ex rel. Beller v. United States*, 221 F.R.D. 696, 701 (D.N.M. 2003)). Concerning supplemental reports, Rule 26 requires parties to share "[a]ny additions or changes' to an expert's disclosure . . . in a timely manner and no later than the time the party's pretrial disclosures under Rule 26(a)(3) are due." *Id.* (quoting Rule 26(e)(1)(A), (2)) (internal quotation marks omitted). "Determining whether a party's expert disclosure was timely often requires more than just checking a calendar. For supplemental and rebuttal opinions, in particular, the task is as much a question of substance as chronology." *Bentley*, 2016 WL 5867496, at *3.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, **unless the failure was substantially justified or is harmless**." Fed. R. Civ. P. 37(c)(1) (emphasis added). "It is well-established that [Rule] 37(c)(1), enacted in 1993, mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified." *Vance v. United States*, No. 98–5488, 1999 WL 455435, at *3 (6th Cir. June 25, 1999) (table decision) (footnotes omitted) (citing *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998); *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996); *Ames v. Van Dyne*, 1996 WL 662899 at *4 (6th Cir. Nov. 13, 1996); *Provident Life & Accident Ins. Co. v. Adie*, 176 F.R.D. 246 (E.D. Mich. 1997)).

"Harmlessness . . . is the key under Rule 37, not prejudice. The advisory committee's note to Rule 37(c) 'strongly suggests that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party.'" *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) (citing *Vance*, 1999 WL 455435, at *5).

5

In *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015), the Sixth Circuit more recently adopted a "five-factor test" as "a way to implement the two *Vance* considerations."  *Doe by Allen v. Greene Cty. Bd. of Educ.*, No. 3:14-CV-548-PLR-CCS, 2016 WL 8793275, at *6, n.3 (E.D. Tenn. Aug. 24, 2016) (citing *Howe*, 801 F.3d at 747-48).  Whether a party's late disclosure is "substantially justified" or "harmless" under Rule 37(c)(1) is determined by the following factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe*, 801 F.3d at 748 (quoting *Russell v. Absolute Collection Servs., Inc.,* 763 F.3d 385, 396–97 (4th Cir. 2014)).

"The district court has broad discretion to impose the appropriate sanction, and the sanction of exclusion is certainly appropriate when the failure to abide by the requirements of Rule 26 is not substantially justified or harmless."  *Campos v. MTD Prod., Inc.*, No. 2:07-CV-00029, 2009 WL 2252257, at *9 (M.D. Tenn. July 24, 2009) (citing *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003)).  The potentially sanctioned party bears the burden to prove harmlessness.  *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 272 (6th Cir. 2010) (citing *Roberts*, 325 F.3d at 782).

## III.    ANALYSIS

Level 3's only objection to the October Report is that it includes calculations based on the 2012-2014 WAR figures for the first time, when it is undisputed the Districts had these WARs by May 1, 2019.  Thus, Hebert could have used the actual WAR figures beginning with his initial July Report.

As Level 3 argues, "Rule 26(e) does not permit supplementation of an expert report to remedy an inadequate or incomplete preparation or review by an expert in the first instance." *EEOC v. Heartland Auto. Servs., Inc.*, No. 2:12-cv-02054-STA-dkv, 2013 WL 12043555, at *12 (W.D. Tenn. July 19, 2013) (citing *Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002); *Saint-Gobian Corp. v. Gemtron Corp.*, No. 1:04-cv-387, 2006 WL 1307890, at *4 (W.D. Mich. May 9, 2006) (excluding expert's supplemental report when party's counsel had financial information relied upon in supplemental report prior to expert deadlines); *Sharpe v. United States*, 230 F.R.D. 452, 462 (E.D. Va. 2005) (denying motion to supplement where party knew that the report was not adequate, but waited until after the deadlines had passed before attempting to supplement)).  Accordingly, this Court has declined to find an expert opinion is a proper supplement where, before filing a disclosure, the expert failed to request from its own party and the party failed to provide its own expert the information necessary for the expert to reach a conclusive opinion.  *See, e.g., Am. Nat. Prop. & Cas. Co. v. Stutte*, No. 3:11-CV-219, 2015 WL 2095868, at *5 (E.D. Tenn. May 2, 2015) (expert initially did not offer a conclusive opinion; supplementation not allowed where the expert "failed to request," and the defendants "failed to provide, the information that [the expert] felt necessary to reach a conclusive opinion").

"Inadequate or incomplete preparation or review" is not exactly what happened in this case, however.  The Districts credibly explain why the 2012-2014 WARs were not given to Hebert, and why, even after the correspondence Level 3 cites in its brief, the Districts believed they had given Hebert all available WARs [*see* Doc. 101 at Page ID # 2626].  The Court observes the parties have engaged in contentious discovery disputes in the past year or so of this case.  A misunderstanding that some WARs were not in the Districts' possession was not necessarily

7

unreasonable. Moreover, there is nothing in the record suggesting Hebert knew the Districts had the 2012-2014 WARs but declined to ask for them.

The circumstances under which Rule 26 **does** allow for expert supplements include the following: "(1) to correct an error or inaccuracy; (2) to respond to an opposing expert pointing out gaps in the supplementing expert's chain of reasoning; or (3) to reflect an expert's changed opinion." *Hoskins Oil Co., LLC v. Equilon Enters., LLC*, No. 3:16-CV-417-JRG-DCP, 2019 WL 691394, at *2 (E.D. Tenn. Feb. 19, 2019) (citing *Eiben v. Gorilla Ladder Co.*, No. 11-CV-10298, 2013 WL 1721677, at *6 (E.D. Mich. Apr. 22, 2013)). The estimated figures Hebert used in his first two reports were inaccurate; by substituting the figures from the WARs, Hebert corrected that inaccuracy. *See Fort Collins Nissan, Inc. v. Kia Motors Am., Inc.*, No. 17-cv-00795-WYD-NYW, 2018 U.S. Dist. LEXIS 211094, at *7-11 (D. Co. Dec. 14, 2018) (finding proper supplement where damages expert was alerted at deposition by defendant that he had used the wrong data set in his original report; finding supplement was timely even though plaintiff had access to the correct financial statements all along). Accordingly, the Court finds the October Report is a proper supplement.

Because it is a proper supplement, the October Report was timely served. Rule 26(e)(2) provides that "[a]ny additions or changes to [expert] information must be disclosed by the time the party's pretrial disclosures . . . are due." The Scheduling Order sets a deadline of January 17, 2020, for pretrial disclosures [Doc. 78], more than three months after the October Report was served.

Even if the October Report was not a proper supplement, and therefore, untimely, the Court finds the late submission harmless under the factors listed in *Howe*. The October Report provides

for a $9 million reduction in damages from the September Report. Level 3's damages expert, Pitkin, is being deposed on October 30, and can address Hebert's October Report at that time. Level 3 overstates the amount of work required to review the changes; as the Districts point out, Hebert did not use any new methodology or formulas, and the corrections appear to affect at most one column of data for three of the ten years covered by the WARs.

Level 3 claims that following the September Report (which used statistical estimates for 2012-2014), it assumed Hebert intentionally did not rely on the 2012-2014 WARs, such that it was surprised to see the 2012-2014 WARs incorporated in the October Report. It seems obvious Hebert would prefer to use the WAR data over the statistical estimates. Moreover, the September Report indicates the WAR data was preferred: "The data reported was not complete for all months, requiring us to interpolate information where data points were missing. . . . In circumstances where there was not actual reported TRA WAR Lines prior to or post to the known value, nearest value fill was utilized." [Doc. 97-3 at Page ID # 2508-09]. *See Fort Collins Nissan*, 2018 U.S. Dist. LEXIS 211094, at *11 ("[T]he Second Amended Report does not contain any new methodology and rather corrects Mr. Rosenfield's analysis based on accurate data—data known to all and which Defendant stressed at Mr. Rosenfield's deposition is the only reliable data to calculate Plaintiff's lost profits."). Further, as a practical matter, the October Report provides for a $9 million reduction in damages from the September Report.

The Court is issuing this Order with ample time for the parties to prepare for the upcoming *Daubert* hearing on November 6, 2019 [Doc. 100], and likely in sufficient time for Pitkin to at least review the report before his October 30 deposition. Nevertheless, to address any possible harm to Level 3, the Court will permit Level 3 to further depose Hebert as to the October Report

9

if necessary, provided the deposition does not delay the Court's scheduled *Daubert* hearing.   The

Court finds no further adjustments to the Scheduling Order are justified under the circumstances,

as Level 3 can address any new *Daubert* issues concerning Hebert at the November 6 hearing.

Finally, the Court finds monetary sanctions are not warranted, and that request will be denied.

## IV.     CONCLUSION

For the reasons set forth above, the motion to strike [Doc. 97] is **DENIED**.   The parties

are **ORDERED** to meet and confer, as soon as possible, to discuss whether further deposition of

Hebert is necessary; and if so, to agree on an appropriate schedule for the deposition that will not

delay the scheduled Daubert hearing.

The motion to add an exhibit [Doc. 98] is **DENIED AS MOOT**.

SO ORDERED.

ENTER:

s/*Susan K. Lee*

SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE